**UNITED STATES, Appellee,**

v.

**Sergeant Dwayne C. THOMPSON, 431–35–4697, United States Army, Appellant.**

**ACMR 8801689.**

U.S. Army Court of Military Review.

22 Feb. 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Patricia D. White, JAGC (on brief).

For Appellee: Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain George R. Johnson, JAGC (on brief).

Before KANE, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

GILLEY, Judge:

Contrary to his pleas, a special court-martial convicted appellant of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. I 1983). The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for two months, forfeiture of $447.00 pay per month for one month, and reduction to the grade of Private E1.

The appellant contends that the military judge erred by denying appellant's motion to suppress evidence that his urine contained marijuana. We find that the military judge erred in finding, first, a substantial basis and, then, probable cause to order seizure of the appellant's urine for testing.

### I. Facts

We find the following facts:

a. The appellant's commander ordered that the appellant provide a urine sample because, during an inspection, a dog used by the military police "alerted on" the "NBC [Nuclear, Biological, and Chemical] Room," and the appellant was the noncommissioned officer in charge of the room. Those dogs alert when they detect the odor of marijuana, cocaine, or heroin or the residue of these substances.

b. The commander had no reason otherwise to suspect that either the appellant or the other noncommissioned officer with a key to the NBC room illegally used drugs.

c. The commander assumed the dog had entered the room, but he did not know that. In fact, the dog alerted outside the closed door of the NBC room. The room was not opened for the police team with the dog.

d. The commander did not know whether the odor of a controlled substance the dog had detected emanated from the door, the desk inside the room, or the NBC gear located in the room.

e. Dogs also alerted that morning on one barracks room while inspecting three-fourths of the company area.

f. The appellant spent the majority of each duty day in the NBC room.

g. At least twenty people per day were in the NBC room, and many more traversed the hallway going by the NBC room.

h. The commander did not know how long a marijuana scent would be detectable after marijuana had been removed from a given location. He did know that the residual presence of marijuana could be detected for "quite a long time."

i. The commander asked the military policemen using the dog whether he, as commander, had probable cause to order a urine test. They told him that "once our dogs alert on an individual's room, the commander has probable cause to have those individuals tested." After talking to the policemen, the commander decided to order the appellant to have his urine tested. He wanted to treat all soldiers in that situation similarly, while at the same time desiring to take appropriate action as a commander.

He felt that he had a choice of testing the appellant or the entire company. All 148 of the unit's soldiers visited the NBC room at least once a month to remove their "gas masks" for exercises. The commander described the appellant as the "individual occupant" of the NBC room.

j. The commander had personally assured himself that the reliability of the two marijuana-sniffing dogs was "awfully high," and that the handlers were very professional.

k. The appellant entrusted the NBC room to other soldiers for short periods of time.

The military judge found that based on those facts, the commander did not have probable cause to order the taking of appellant's urine for testing. He did find that the commander had a substantial basis to order such a search and acted in accordance with that good faith belief. Therefore, he found the urine test was lawful and its positive results admissible.

## II. Good Faith Exception

■ Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 311(b)(3)(B), provides a good faith exception to the exclusionary rule when the individual issuing the authorization did not have probable cause but "had a substantial basis for determining the existence of probable cause [hereinafter M.C.M., 1984 and Mil.R. Evid.]." The Manual for Courts–Martial reasonably follows the Supreme Court's application of the good faith exception doctrine set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The Court of Military Appeals addressed this issue in *United States v. Morris,* 28 M.J. 8 (C.M.A.1989), albeit Military Rule of Evidence 311(b)(3) was not in effect at the time of the search in that case. Nevertheless, we can draw upon that case because the Court applied *Leon* and referred to Military Rule of Evidence 311(b)(3)(B). *See United States v. Queen,* 26 M.J. 136, 141–42 (C.M.A.1988) (quoting from *Guggenmos v. Guggenmos,* 218 Neb. 746, 359 N.W.2d

87, 90 (1984), *modified,* 28 M.J. 289 (C.M.A. 1989).

Each judge in *Morris* used a different basis to hold that evidence obtained from a seizure of urine was inadmissible. Judge Sullivan would find the good faith exception of *Leon* applicable to orders by a commander for a search where the order was in fact not based on probable cause. *United States v. Morris,* 28 M.J. at 19 (Sullivan, J., concurring in part and in the result). The drafters of Military Rule of Evidence 311(b)(3) state that all three of its prongs are based on *Leon.* M.C.M., 1984, Mil.R. Evid. 311, analysis, appendix 22 at A22–17. We note that Judge Sullivan then cites Military Rule of Evidence 311(b)(3)(C), which refers to reasonable conduct by agents carrying out a defective warrant or order. But we presume that in Judge Sullivan's acceptance of the good faith exception, he would view the "substantial basis" test for the commander under Military Rule of Evidence 311(b)(3)(B) as constitutionally permissible. Judge Cox would admit the results of a commander's order to seize a soldier's urine based on accusatory information if that decision was "conscientious, well-reasoned, *i.e.,* plausible." *Id.* at 18. Chief Judge Everett viewed the good faith exception as not applicable to searches directed by commanders. *Id.* at 12 and n. 2.

■ We, too, note concern with a company commander's ability to act sufficiently in a neutral and detached fashion. The commander's decision to search is subject to closer scrutiny than are those of military judges or magistrates. *See United States v. Queen,* 26 M.J. at 142; *United States v. Stuckey,* 10 M.J. 347 (C.M.A.1981). When a commander does not obtain "criminal facts" from police, we will not find good faith in the face of apparent blind faith. Here, the commander did not probe the police agents sufficiently to learn of crucial information that could provide substantial basis for finding probable cause that the appellant's urine contained evidence of illegal drug use. *Leon,* too, observes that the good faith exception will not apply when the person issuing the warrant

"wholly abandoned his judicial role." *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d 677. The company commander here abandoned his role as a magistrate even though he was trying to be a conscientious commander. He stated that his choice was either to test the appellant or his entire company.

Even a conscientious commander must have a well-reasoned basis to order the seizure of urine for testing if the results are to be admissible under Judge Cox's view. *See United States v. Morris,* 28 M.J. at 18 (Cox, J., concurring in part and dissenting in part). That requirement seems close in meaning to the "substantial basis" test of Military Rule of Evidence 311(b)(3)(B). In other words, the conscientious commander must receive the facts and reason well to reach the conclusions needed to decide how to proceed as a commander. Failure to do so bars admissibility under either theory.

■ The standard of review of the "substantial basis" determination has not been addressed before by us. We apply an abuse-of-discretion standard of review to probable cause determinations. *See United States v. Aker,* 19 M.J. 733 (A.F.C.M.R. 1984), *petition denied,* 20 M.J. 133 (C.M.A. 1985). An "abuse of discretion" is a "clearly untenable" decision amounting to a denial of justice. *See United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987). We see no reason not to apply the abuse of discretion test to review the military judge's determination of "substantial basis" as well. The Supreme Court recognized a similar limitation in describing the good faith exception. In *Leon,* the Court precluded the exception where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d 677 quoting *Brown v. Illinois,* 422 U.S. 590, 610–611, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975).

The military judge found a substantial basis for his determination of "good faith" because the appellant was the "primary occupant of the room" that was "under his control and dominion at all times, with the

exception of apparently some short periods of time when the accused entrusted it to someone during his brief absences." We find that conclusion clearly untenable. The military police only related that a dog had "alerted on" the NBC room. That room was a virtual thoroughfare for the company's personnel, and was not the dwelling of the appellant. For example, enough marijuana could have adhered to the surface of a gas mask so that a scent of that marijuana would have been discernable by a dog. Likewise, a marijuana cigarette rubbed on the outside of the door itself could have been the source of the scent.

Of course, the possibility existed that the appellant would test positive. But we are looking for the substantial basis used by the commander to conclude that he had probable cause to order the appellant to provide a urine sample. "Probable cause" here would be a "reasonable belief" of finding incriminating evidence in the appellant's urine. Mil.R.Evid. 315(f)(2). A finding of probable cause was not plausible here. The appellant had a heavily-frequented place of duty and was a noncommissioned officer with a previously "clean" reputation. In fact, no logical link was made between the dog's "alert on" the room, in this case at its door, and use of marijuana by the appellant. The police did not make that connection in advising the commander, the facts did not warrant it, and the commander made no inquiry to attempt to make that essential connection. In short, the commander had no evidence upon which to conclude, subjectively in good faith or objectively in fact, that there was probable cause that the appellant would be found positive on a urine test.

III. New Probable Cause Determination

The military judge revised his position after hearing the company commander testify in the sentencing proceedings. The judge then found that the commander had probable cause to order the urine test. No substantial new evidence was elicited. We likewise find clearly untenable the military judge's new finding of probable cause.[1]

No other plausible basis is available here to support this seizure of urine and its test as reasonable. In reality, the search was based on an individualized suspicion that plainly did not amount to probable cause. Accordingly, the results of the urine test were inadmissible. This case falls well outside any rule permitting admissibility of evidence when the search was conducted without probable cause or plausible good faith.

The findings of guilty and the sentence are set aside. The Charge and its Specification are dismissed.

Senior Judge KANE and Judge GIUNTINI concurs.

---

1. We note issues of military due process: was the appellant denied a fair trial by (a) reliance on evidence introduced after findings to establish a viable basis for an evidentiary ruling made prior to findings that was essential to guilt, and (b) even if permissible, was due process accorded here when notice and opportunities to cross-examine, introduce evidence, or argue on the issue were in effect precluded. We expressly decline to address those issues since results of the urine test are inadmissible in any event.