UNITED STATES, Appellee,

v.

Ken I. CAMANGA, Private First
Class U.S. Army, Appellant.

No. 68,261.
CMR No. 9100408.

U.S. Court of Military Appeals.

Argued June 3, 1993.

Decided Sept. 28, 1993.

For Appellant: *Captain Clement B. Lewis, III* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Major James M. Heaton* (on brief).

For Appellee: *Lieutenant Colonel Joseph A. Russelburg* (argued); *Colonel Dayton M. Cramer, Major Joseph C. Swetnam, Captain Jane F. Polcen* (on brief).

## Opinion of the Court

CRAWFORD, Judge:

Appellant was convicted, contrary to his pleas, by a military judge sitting alone as a general court-martial of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The convening authority approved the sentence of a bad-conduct discharge, confinement for 22 months, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and the sentence. 34 MJ 1135 (1992). We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S OFF–POST RESIDENCE AND FROM THE RESIDENCE OF A NEIGHBOR, WHERE THE SEARCH OF APPELLANT'S RESIDENCE WAS TAINTED BY PRIOR ILLEGAL SEARCHES OF HIS BARRACKS ROOM AND PRIVATELY OWNED VEHICLE, AND THE SEARCH OF THE NEIGHBOR'S RESIDENCE WAS TAINTED BY AN ILLEGAL APPREHENSION OF APPELLANT.

II

WHETHER TRIAL DEFENSE COUNSEL ERRED BY FAILING TO INFORM THE MILITARY JUDGE IN A TIMELY MANNER OF APPELLANT'S DESIRE TO SEEK CIVILIAN COUNSEL.

I

## FACTS

Two fires of suspicious origin led agents of the Criminal Investigation Command (CID) to ask the battery commander for permission to search appellant's barracks room. The first fire was in early May 1990 at appellant's battery command. This fire destroyed, among other things, all the records pertaining to appellant's nonjudicial punishment under Article 15, UCMJ, 10 USC § 815. These records had been pulled from a file, placed on a desk top, soaked with an accelerant, and ignited.

Unrelated to the two fires, in early August 1990, Private First Class H, assigned to the same installation as appellant, reported that several thousand dollars worth of personal items, including stereo components and compact discs, were stolen from his on-post temporary storage locker. These items were seized from appellant's off-post quarters and from Mr. Lozano, a neighbor of appellant's wife. The discovery and seizure of these items formed the basis of the larceny charge.

The second fire occurred on August 18, 1990, in appellant's battalion headquarters. Entry was made by removing two bolts from a broken window on the ground floor. An incendiary device was found in the battalion legal clerk's office. Varnish was placed immediately beneath the incendiary device, and one can of wood stain was placed in the office. Paint thinner was poured throughout the building. The record of appellant's summary court-martial proceedings, initiated after appellant had refused nonjudicial punishment, were placed on top of the legal clerk's desk, soaked with an accelerant, and ignited.

On the same day of the second fire, CID agents apprehended appellant outside his wife's off-post residence and towed his car to the CID office. Later a search of his car revealed a receipt for the purchase of a pipe similar to that used for the incendiary device that started the fire at the battalion headquarters. The bolts from the first

floor window of the battalion headquarters were also found.

On August 19, 1990, appellant was returned to his unit and ordered by the charge of quarters to remain there pursuant to the battery commander's order. However, later that morning appellant left his unit contrary to his orders. The battery commander advised the CID of appellant's absence; the CID went to appellant's off-post residence, which was different from his wife's residence, coaxed him out of the house, and apprehended him.

Mr. Lozano observed the CID with appellant in custody. Lozano walked over to appellant's residence and informed the CID agents that he had stored some items for appellant at his residence for a fee. The agents told Mr. Lozano to hold the items. On August 20 or 21, 1990, the agents returned to Mr. Lozano's home and seized a number of items. From checking the serial numbers they determined that these items had been reported stolen in August 1990 by PFC H.

On the morning of August 23, 1990, the agents went to appellant's off-post quarters and asked appellant's roommate for permission to search. Appellant's roommate permitted the agents to enter the apartment and look in the common area but not in appellant's room. Appellant's roommate mentioned that appellant had bought paint thinner and pieces of pipe similar to that used in the construction of the explosive device. The agents observed in plain view two milk container crates containing compact discs, which they determined to have been among those reported stolen earlier in the month by PFC H.

On the afternoon of August 23, 1990, the FBI obtained a search warrant from a federal magistrate to search appellant's apartment for a steel pipe and paint thinner or any container holding paint thinner. The search warrant was executed that same day, and numerous personal items (kitchen utensils, electric fan, Panasonic dual cassette player, etc.) reported stolen in August 1990 by PFC H were seized.

At trial appellant alleged five incidents in which his Fourth Amendment rights had been violated: (1) the search of his barracks and seizure of his car on August 18, 1990; (2) the inventory of his car in August 1990; (3) appellant's apprehension on August 19, 1990; (4) the seizure of items from appellant's wife's neighbor's home several days later; (5) and the seizure of items from appellant's apartment on August 23, 1990. The military judge ruled that the first three incidents constituted violations of the Fourth Amendment but upheld the seizure from the neighbor's home and from appellant's apartment.

Appellant argues that the items seized from the neighbor's home and from appellant's apartment should have been suppressed because they resulted from, and thus were tainted by, the illegal apprehension. We disagree.

## DISCUSSION

RCM 302(b)(1), Manual for Courts-Martial, United States, 1984, provides that military law enforcement personnel may apprehend individuals when there is probable cause to believe there is a violation of the Uniform Code. RCM 302(c). Whether there is probable cause is based upon an "objective," rather than a subjective, standard. *Scott v. United States*, 436 U.S. 128, 136–37, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *United States v. Roa*, 24 MJ 297 (CMA 1987).

At the time of the apprehension, CID suspected appellant of two arsons and had probable cause to believe that he disobeyed his commander's order to remain at his unit. Probable cause for the latter offense is uncontested. That the officers may not have had grounds to apprehend appellant for arson does not undermine the basis for apprehending him for violating the order to remain at his unit. *United States v. Prouse*, 945 F.2d 1017, 1022–24 (8th Cir.1991); *Klingler v. United States*, 409 F.2d 299 (8th Cir.1969).

The exclusionary rule would be carried to an extreme if an invalid reason to

arrest cancelled a valid one. Thus, we hold that the evidence seized from Mr. Lozano's apartment was not tainted by an illegal apprehension and was based on Lozano's voluntary consent. An individual who is not the owner of property but has joint access and control over the property, especially under the circumstances of this case, may validly give consent to search.[1] *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Clow*, 26 MJ 176 (CMA 1988) (accused's estranged husband had sufficient control over off-post apartment to consent to a search of a cabinet and her bedroom for contraband).

We also uphold the search of appellant's apartment based on the independent-source doctrine. If an affidavit contains both illegally-obtained and legally-obtained information, the illegally-obtained information should be excised. If the remaining information is sufficient to establish probable cause, it is deemed to be from an independent source. *See, e.g., United States v. Gillenwaters*, 890 F.2d 679 (4th Cir.1989); *James v. United States*, 418 F.2d 1150 (D.C.Cir.1969). This approach to the independent-source test follows the rationale of *Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988), where the Court noted, "[W]hile the Government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied."

Applying the independent-source doctrine to appellant's case results in excising the information pertaining to the evidence illegally seized from appellant's barracks and car. We then review the remaining information to determine whether it is sufficient to justify the search of appellant's apartment for a pipe and paint thinner similar to that used at the battalion headquarters. Here, the agent seeking the search warrant detailed in the affidavit the description of the fire at the battalion headquarters, the basis for entry, the type of accelerants used, the type of pipe used, and the circumstances relating to the file containing appellant's court-martial proceedings. The agent also described the fire of May 20 at appellant's battery commander's office in which a file pertaining to his nonjudicial punishment was also burned. Additionally, the agent mentioned that appellant's roommate had told CID agents that he observed appellant with pieces of steel pipe and paint thinner similar to that found at the battery headquarters. Lastly, the agent indicated that, when appellant was placed in his barracks room under "house arrest," he fled from his unit.

All this information was obtained by personal observation of individuals who were not themselves criminals. *See United States v. Moore*, 23 MJ 295 (CMA 1987). There was a nexus in time and place to appellant's apartment which would satisfy the temporal and geographical elements of probable cause. *United States v. Johnson*, 23 MJ 209 (CMA 1987); *United States v. Land*, 10 MJ 103 (CMA 1980). Hence we hold that the remaining portion of the affidavit contained sufficient information to conclude that the search of appellant's apartment was based on probable cause.[2]

## II

While the second issue has been styled as defense counsel error, the issue really concerns whether appellant waived the right to seek civilian defense counsel because of an untimely request. At the beginning of the trial appellant was informed of his right to counsel and elected to be defended by Captain (CPT) W. However, after the judge announced the sentence, CPT W informed the judge that, just prior to closing argument, appellant asserted that he wished to be defended by unnamed civilian counsel. Even if the military judge was immediately thereafter in-

---

1. Because of a valid consent search and seizure, we need not address appellant's standing to object to a search of Mr. Lozano's apartment.

2. Assuming a lack of probable cause, the good-faith exception would apply. *United States v. Chapple*, 36 MJ 410 (CMA 1993); *United States v. Mix*, 35 MJ 283 (CMA 1992); *United States v. Lopez*, 35 MJ 35 (CMA 1992).

formed of appellant's decision, the request for new counsel would have been untimely. While appellant has the right to change his mind as to counsel, failure to make a timely request will be considered waiver of the right to individually requested counsel. *United States v. Kinard,* 21 USCMA 300, 45 CMR 74 (1972).

We agree with the Court of Military Review and hold

that the appellant was not prejudiced by his counsel's failure to advise the military judge of his request for civilian counsel since the military judge would not have abused his discretion in denying a request for continuance had it been timely made.

34 MJ at 1140.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.