**UNITED STATES**

v.

**Airman First Class Gino J. GALLO,
United States Air Force.**

ACM 33303.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 28 Jan. 1998.

Decided 25 April 2000.

Appellate Counsel for Appellant: Major Stephen P. Kelly (argued), Colonel Jeanne M. Rueth, Colonel Theodore J. Fink, and Colonel Douglas H. Kohrt.

Appellate Counsel for the United States: Captain Suzanne Sumner (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major J. Robert Cantrall.

Before SNYDER, Chief Judge, SCHLEGEL, Senior Judge, and BURD, Appellate Military Judge.

## OPINION OF THE COURT

SNYDER, Chief Judge:

Tried by a military judge sitting as a general court-martial, appellant stands convicted, contrary to his pleas, of dereliction of duty and five specifications of violating the Protection of Children Against Sexual Exploitation Act of 1977, as amended, and the federal obscenity statute. Articles 92, 134, UCMJ, 10 U.S.C. §§ 892, 934 (18 U.S.C. §§ 2251(c), 2252(a)(1), (2), (4), 1462(a)). He was sentenced to a dishonorable discharge, confinement for 42 months, forfeiture of all pay and allowances, and reduction to E–1, all of which the convening authority approved. Appellant has submitted six assignments of error for our consideration. We set aside part of the findings but otherwise affirm.

### I. Legality of Search

#### a. Background

Appellant avers that the search of his off-base mobile home was illegal because the issuing magistrate was not presented with information sufficient to establish probable cause that evidence of a crime would be found in appellant's home. After hearing evidence on trial defense counsel's timely motion to suppress, the military judge found the essential facts, as follows:

1. The accused is assigned to the Headquarters Standard Systems Group, Maxwell Air Force Base, Alabama.

2. On or about October 22, 1996, the Headquarters Standard Systems Group received information that a government computer with IP Address 143.158.38.2 was trading child pornography. Special Agent Schwartz of the Air Force Office of Special Investigations became aware of the IP address and that it belonged to a government computer used by the accused.

3. On October 23, 1996, special agents from the Air Force Office of Special Investigations obtained a search authorization to make a mirror copy of the accused's government computer hard drive to search for evidence of misconduct, specifically possession and distribution of child pornography via the Internet. See Appellate Exhibit XXI.

4. On October 23, 1996, Special Agents Schwartz and Merkel made a mirror copy of the hard drive of the accused's government computer.

5. An analysis of the hard drive, which began on October 30, 1996, revealed that the hard drive contained several graphic images, including images of naked children. See Appellate Exhibit XX.

6. The analysis by the AFOSI also revealed that some files had been either read from the floppy drive, transferred from the hard drive to the floppy drive, or transferred from the floppy drive to the hard drive.

7. On November 8, 1996, Special Agent Schwartz interviewed Master Sergeant Schipani. Special Agent Schwartz asked Master Sergeant Schipani if she knew the accused had a computer at home. Master Sergeant Schipani stated that she did not know if the accused had a computer at home. There is no evidence that the special agent requested Master Sergeant Schipani to question the accused regarding whether or not he had a computer at home.

8. Sometime after November 8, 1996, Master Sergeant Schipani questioned the accused regarding whether or not he had a computer at home. Master Sergeant Schipani did not question the accused prior to asking him if he had a computer—excuse me—did not advise the accused of his rights under Article 31 of the UCMJ prior to asking questions if he had a computer. The accused responded that he did have a computer. Master Sergeant Schipani provided this information to AFOSI.

9. On November 19, 1996, the Air Force Office of Special Investigations and United States Custom Service sought and obtained a warrant to search the accused's residence at 3918 Lakewood Drive, Lakewood Estates, Montgomery, Alabama. The description of the items to be searched included—quote—computers and electronic storage devices and removable storage media, including, but not limited to, diskettes—also known as floppy diskettes, mass storage devices, including nonremovable storage devices"—and I've left out some language—"for assessing information pertaining to child pornography and/or child erotica as defined herein. See Appellate Exhibit XX.

10. There is no evidence that any person, in the making of this affidavit, acted with a reckless disregard for the truth.

\* \* \* \* \* \*

14. On November 19, 1996, Vanzetta McPherson, United States Magistrate Judge, Montgomery, Alabama, issued a search warrant authorizing a search of the accused's residence at 3918 Lakewood Drive, Lakewood Estates, Montgomery, Alabama. See Appellate Exhibit XX. Search warrants issued by state and federal civilian magistrates and executed by military criminal investigators are specifically recognized in military law. *United States v. Modesto*, 39 M.J. 1055 (ACMR 1994). As a general proposition, warrants issued by a magistrate are entitled to great deference by reviewing courts. *United States v. Modesto*, 39 M.J. 1055 (ACMR 1994). *See also United States v. Ozanich*, 27 M.J. 585 (AFCMR 1988).

15. The search warrant was based on the affidavit prepared by James Putnoky, a senior special agent with the United States Customs Service, Department of the Treasury. Mr. Putnoky stated that the information contained within his affidavit was based on his personal knowledge and—

quote—information obtained from other law enforcement officials—close quote. The defense alleges that there were statements within the affidavit that were incorrect or based on information improperly obtained from the accused.

16. The defense believes that the search of the accused's home was based upon mere suspicion rather than probable cause or even reasonable suspicion. The defense argues that the government had no information that the accused had information on his home computer. Furthermore, they dispute the statements contained in the affidavit by Mr. Putnoky upon which the magistrate made her decision to issue the search authority.

17. The first of these alleged incorrect statements is Mr. Putnoky's description of the accused as a pedophile and that, based on his experience and training, pedophiles almost always maintain and possess sexually explicit materials containing children in their home. However, as detailed in his affidavit, Mr. Putnoky based his determination that the accused was a pedophile on the information obtained during the investigation. Mr. Putnoky, in his affidavit, details the basis for his belief that the accused is a pedophile. One of the details was the fact that over 262 apparent child pornography photographs were discovered on the hard drive of the accused's government owned computer. All of this information, upon which Mr. Putnoky based his opinion that the accused was a pedophile, was provided the magistrate. Therefore, there is no basis for the defense contention that the military magistrate was somehow misled by Mr. Putnoky's statement that he was a pedophile.

18. The next statement contained in the affidavit by Mr. Putnoky which the defense alleges is incorrect is the information contained in paragraph 13, which states, among other things, an analysis of the hard drive of the accused's government computer revealed that—quote—on several instances, files were downloaded or uploaded from the hard drive to a diskette, relating to files received over the Internet—close quote. Paragraph 13, which I just referred to, goes on to state that—

quote—Once files are downloaded to a diskette, this makes them extremely portable—close quote. The defense points to the testimony of Special Agent Merkel in support of their contention. Special Agent Merkel testified that the statement in paragraph 13 was correct, but further testified that there was another possible explanation; that is, the accused could have reviewed a file on a floppy disk without a transfer. However, in all cases, Special Agent Merkel testified that the information involved the use of drive A, which is for a floppy disk. Therefore, any discrepancy in the affidavit, when viewed under the totality of the circumstances, did not materially mislead the magistrate.

19. The next statement contained in the affidavit prepared by Mr. Putnoky which is challenged by the accused is also contained in paragraph 13. Specifically, the defense is challenging the statement that the accused had a personal computer at his residence. The defense argues that this information was illegally obtained from the accused. This also forms a basis for their second argument as discussed above. This information was based on the accused's response to a question by Master Sergeant Schipani, his supervisor. Master Sergeant Schipani testified that, when she initially spoke with Special Agent Schwartz, she was not sure if the accused had a personal computer at his residence. She testified that, after this interview, she questioned the accused whether he had a personal computer at his residence. She stated that she was not sure why she asked the question, including whether it was based on a request by Special Agent Schwartz. She testified that she did not read the accused his Article 31 rights prior to asking the accused this question. Article 31—quote—requires warnings only when questioning is done during an official law enforcement investigation or disciplinary inquiry—close quote. *See United States v. Duga,* 10 M.J. 206 (CMA 1981) and *United States v. Loukas,* 29 M.J. 385 (CMA 1990). Analysis of whether questioning is part of an official law enforcement investigation or disciplin-

ary inquiry is governed by an objective test. *United States v. Good,* 32 M.J. 105 (CMA 1991). While there's no conclusive evidence to show that Master Sergeant Schipani was acting in a law enforcement capacity, the courts in *Duga* and *Loukas* seemed to indicate that, when questioning is done by the subject's military supervisor, there is a rebuttable presumption that the questioning was done for disciplinary purposes.

20. If an affidavit contains both illegally-obtained information and legally obtained information, the illegally obtained information should be excised. *United States v. Camanga,* 38 M.J. 249 (CMA 1993). If the remaining information is sufficient to establish probable cause, it is deemed to be from an independent source. *United States v. Camanga,* 38 M.J. 249 (CMA 1993). I have concluded that, even assuming that the information obtained by Master Sergeant Schipani was illegally obtained, the remaining information contained in the affidavit provided to the magistrate was sufficient to establish probable cause.

21. Additionally, I conclude that, if there were any defects in the obtaining of the search warrant, the evidence should still be admitted under the good faith exception. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. [3405], 82 L.Ed.2d 677[ ], a 1984 case; *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737[ ], a 1984 case. *United States v. Lopez,* 35 M.J. 35 (CMA 1992)[.]

### b. Discussion.

 A military judge's ruling on the admission or exclusion of evidence, including rulings on motions to suppress, are reviewed for an abuse of discretion. *United States v. Ayala,* 43 M.J. 296 (1995); *United States v. Agosto,* 43 M.J. 745, 748 (A.F.Ct.Crim.App. 1995). As search issues generally are mixed questions of fact and law, we review a military judge's findings of fact under a clearly erroneous standard, and we review the military judge's conclusions of law under a *de novo* standard of review. A military judge abuses his or her discretion on a motion to

suppress only if the factual findings are clearly erroneous or the law is applied erroneously. *Ayala,* 43 M.J. at 298; *United States v. Burris,* 21 M.J. 140, 144 (C.M.A. 1985). The military judge's findings are fully supported by the evidence of record, and we adopt them as our own. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

 Probable cause exists when there is sufficient information to provide the authorizing official a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched. Mil.R.Evid. 315(f)(2); *United States v. Mix,* 35 M.J. 283 (C.M.A.1992). Whether probable cause exists for a commander or magistrate to issue an authorization to search is determined by the totality of the circumstances presented to the magistrate. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *accord United States v. Hester,* 47 M.J. 461, 463, *cert. denied,* 525 U.S. 850, 119 S.Ct. 125, 142 L.Ed.2d 101 (1998). In *Gates,* the Court emphasized the fact that the law does not demand that a magistrate make technical, legal determinations when deciding whether to issue a warrant. Instead, only a practical, common sense assessment is required, because the central question is whether there is probable cause, not whether there is proof beyond a reasonable doubt. *See Gates,* 462 U.S. at 231, 103 S.Ct. 2317, and cases cited therein.

 Searches authorized by magistrates are preferable to searches conducted under other bases. Consequently, a magistrate's determination that probable cause existed is entitled to great deference. *See United States v. Leon,* 468 U.S. 897, 914 (1984); *Hester,* 47 M.J. at 466 (Gierke, J., concurring in part and in the result); *United States v. Lopez,* 35 M.J. 35, 49–50 (C.M.A.1992) (Wiss, J., concurring in the result). In light of this deference, this Court's *de novo* review is confined to whether the military judge was correct in ruling that the magistrate had a substantial basis for finding probable cause existed to search appellant's residence. *United States v. Monroe,* 52 M.J. 326, 331 (2000); *United States v. Figueroa,* 35 M.J. 54, 56 (C.M.A.1992).

The military judge apparently ruled that it was improper for Master Sergeant (MSgt) Schipani to ask appellant if he owned a personal computer at home without first advising him of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831. He concluded that, even if her inquiry of appellant was barred by Article 31, UCMJ, and appellant's answer was excluded from evidence, there still was sufficient information which provided the magistrate a substantial basis for issuing the search warrant. To dispel any uncertainty regarding this issue, we will assume, *arguendo*, that MSgt Schipani's inquiry of appellant should have been preceded by the requisite advisement. *Id.*

■ Whenever an affidavit in support of an application for a search authorization or warrant contains both admissible and inadmissible information, the affidavit is tested for sufficiency solely on the basis of the admissible information. *United States v. Camanga*, 38 M.J. 249 (C.M.A.1993). Assessed under this standard, we agree with the military judge's ruling that there still is sufficient information to support the magistrate's ruling.

Appellant focuses his attack on the portions of Special Agent (SA) Putnoky's affidavit which sets forth his opinion on the behavior of pedophiles. Specifically, appellant avers that SA Putnoky did not demonstrate that he possessed the requisite qualification to opine that appellant fit the diagnosis of pedophilia and that there was no evidence submitted to the magistrate to the effect that appellant previously had been diagnosed as a pedophile. Therefore, any information in SA Putnoky's affidavit which averred appellant is a pedophile lacks a factual basis and, thus, was immaterial to the magistrate's decision. We believe appellant takes too restrictive an approach to the law which governs this area of search law.

■ In *United States v. Henley*, 48 M.J. 864 (A.F.Ct.Crim.App.1998), this Court held that it was perfectly permissible for a magistrate to rely on expert, or other, opinion testimony when determining the existence of probable cause, so long as there was an adequate factual foundation from which the issuing magistrate could personally assess the opinion. *Id.* at 869–70. We further held that there was more than adequate information in that case from which the magistrate could conclude that Captain Henley was a pedophile and still was in possession of pornographic materials which were last seen several months earlier. Part of the underlying foundation was the fact that a certified forensic psychologist previously had read the detailed statements of Henley's children and opined he was a pedophile. However, appellant misreads *Henley* if he is averring that it requires a professional medical diagnosis as a matter of law. We did not so hold in *Henley* nor do we adopt that premise in the instant case. We are not presented with any reason to conclude that an otherwise qualified lay person may not render an opinion on whether one possesses a behavioral disorder. *See* Mil.R.Evid. 701.

■ Appellant's counsel properly conceded during oral argument that, whatever standard may apply to opinion evidence contained in search affidavits, it certainly is no more rigorous than that mandated by Mil. R.Evid. 702. This standard is quite liberal, in that it requires only that the person rendering the opinion possess training or knowledge beyond that of the average person. *United States v. Mustafa*, 22 M.J. 165 (C.M.A.1986). SA Putnoky, by virtue of 26 years of training and on-the-job experience, clearly demonstrated he was qualified to render the opinions contained in his affidavit regarding pedophilia and the habits of pedophiles, *et al.*

We do agree with appellant, however, that SA Putnoky's affidavit lacked any factual support regarding child molestation, for there was no evidence that appellant ever molested anyone, child or adult. But this does not advance his ultimate argument, because SA Putnoky's affidavit addressed more than that facet of pedophilia. SA Putnoky also shared his experience and training regarding how pedophiles retain and catalog child pornography and the actions they take to secure it. More importantly, SA Putnoky did not restrict his subject class to pedophiles. His affidavit also referenced individuals who collect child pornography.

There is ample factual information in the affidavit from which the magistrate could conclude that appellant is a collector of child pornography even if he is not a pedophile. Further, whether appellant is a pedophile is of minimal importance in the instant case. In *Henley,* five years had elapsed since the evidence sought was last seen. Consequently, the information in the affidavit regarding pedophiles was critical on the issue of staleness. *Henley,* 48 M.J. at 869, and cases cited therein (classification of pedophilia meant child pornography still was present in home despite passage of lengthy period of time). This factor is not present in the instant case, because the information on which the investigators were acting was in no way dated. Further, SA Putnoky's opinion was validated by the fact that the suspect files on appellant's workplace computer were password protected. The final link in this chain was the information that a diskette or diskettes had been used in appellant's workplace computer in connection with the files which contained the images of child pornography. A reasonable person easily could conclude that those diskettes were located in appellant's home. This brings us to appellant's final complaint regarding the affidavit, which is whether the materials were adequately described to the magistrate.

 Appellant correctly avers that the issuing magistrate may not rely on the conclusory opinion of an investigator. *New York v. P.J. Video, Inc.,* 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986); *United States v. Monroe,* 50 M.J. 550 (A.F.Ct.Crim.App.1999), *aff'd,* 52 M.J. 326 (2000). In *Monroe,* however, we held that the search magistrate could rely on terms of art used in the affidavit, especially when they were used by a member of the servicing office of the staff judge advocate, to describe the contents of suspected obscene materials. We believe this is especially so where the material is not a book or movie, etc., where overall context is important. In the instant case, in the second and fourth paragraphs of his affidavit, SA Putnoky stated he was requesting authorization to seize evidence of violations of 18 U.S.C. §§ 2251–57 or § 1462. He also used the term, "child pornography" to describe the images found on appellant's workplace computer. These are not mere conclusions. Further, in the appendix wherein SA Putnoky described the items to be seized, he again referred to the terms of the applicable statute and specifically requested permission to seize any visual depiction of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256. There is no reason for us to conclude that the magistrate did not reasonably believe that the images on the computer met that definition. Accordingly, we agree with the military judge that the issuing magistrate had a substantial basis for issuing the search warrant. *Monroe,* 50 M.J. at 561.

We also agree that, if necessary to apply the principle, the search in the instant case qualifies for the good faith exception. There simply is no police misconduct to be deterred in the instant case. The investigators were diligent to invoke legal process at all stages of the investigation, including obtaining a search authorization to inspect the hard drive of the government computer on appellant's desk. It was only after a detailed analysis of that drive that they applied for a warrant to search appellant's home. There is no evidence in this record which supports an allegation that the investigators had a reckless disregard for the truth or that no magistrate would have relied on the affidavit. Mil. R.Evid. 311(b)(3); *Monroe,* 50 M.J. at 561.

## II. Legal and Factual Sufficiency

### a. Child Pornography

Appellant next submits that the evidence is legally and factually insufficient to prove his guilt of Specification 4, Charge II. We agree with the former averment. The specification in question reads as follows:

> In that [appellant] ... did, at or near Montgomery, Alabama, on divers occasions between on or about 1 January 1996 to on or about 20 November 1996, knowingly possess 3 or more digital motion pictures and/or other digital visual depictions of minor children, under the age of 18 years, engaged in sexually explicit conduct, which motion picture and/or visual depictions had been shipped or transported in interstate commerce, in violation of 18 United States Code Section 2252(a)(4).

■ Trial defense counsel moved to dismiss the specification for failure to state an offense. The military judge denied the motion but directed that the language, "and/or other visual depictions," be deleted from the specification. In renewing the overall substantive issue before us, appellate defense counsel correctly observe that the core issue is not the sufficiency of the specification but whether the offense charged is proven. As this Court noted in *United States v. Commander*, 39 M.J. 972, 980 (A.F.C.M.R.1994), the focus of a motion to dismiss for failure to state an offense is the specification itself, not the fact that the government's proof may fall short or the accused may have some defense to the charge. *Accord United States v. Galchick*, 52 M.J. 815 (A.F.Ct.Crim.App.2000); *see also United States v. Snyder*, 428 F.2d 520, 522 (9th Cir.), *cert. denied*, 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). Under the UCMJ, the military is a notice pleading jurisdiction. If a specification informs an accused of the offense against which he or she must defend and bars a future prosecution for the same offense, the specification is sufficient. *United States v. Sell*, 11 C.M.R. 202, 206, 1953 WL 2005 (C.M.A.1953); *see United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A.1983). The specification in the instant case more than satisfies this standard. Therefore, as observed, the real issue is legal and factual sufficiency.

■ To find a conviction legally sufficient, this Court must determine that, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When testing for legal sufficiency, every reasonable inference from the evidence must be drawn in favor of the prosecution. *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991); *accord United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993). Further, the evidence need not be free of conflict to satisfy this standard. *United States v. Steward*, 18 M.J. 506, 508 (A.F.C.M.R.1984). However, to find a conviction factually sufficient, we ourselves, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, must be convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

■ The statute under which appellant was charged, 18 U.S.C. § 2252(a)(4)(B), reads as follows:

Any person who knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including computer, if—

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct. . . .

The elements which the government was required to prove beyond a reasonable doubt are:

1) Appellant knowingly possessed 3 or more motion pictures;

2) The motion pictures contained visual depictions which had been mailed, shipped, or transported in interstate or foreign commerce;

3) The producing of the visual depictions involved the use of minors engaging in sexually explicit conduct; and

4) The visual depictions were of such sexually explicit conduct.

Appellant renews his argument that, to violate this statute, Congress intended that one possess the prohibited items in some form of organized compilation, such as a book or magazine. This is especially so, he avers, in light of the deletion directed by the military judge, which precludes the government from relying on the alternate clause, "or other matter." As such, he argues, the seven motion pictures he possessed on at least two "floppy diskettes" (typical 3½ inch computer disks) do not violate the statute because they are not compiled and do "not qualify as 'film,' 'video tape,' or other similar organized com-

pilations contemplated by the statute." With this we cannot agree.

To support this averment, appellant relies on *United States v. Falk,* 50 M.J. 385 (1999), to argue that the statute under which he was charged does not reach his conduct. Otherwise, Congress would not have subsequently amended the statute to specifically include computer images. *See id.* at 391. This argument is not directly germane to our disposition, because we find appellant's conduct falls squarely within the primary clause of the statute, as opposed to falling under the so called "other matter" clause, which was the salient issue in *Falk. Id.*

In reaching this conclusion, we reject appellate defense counsel's description of the visual depictions in issue in the instant case as "animated graphic image files." We specifically find, as apparently did the military judge, that, the visual depictions in issue, regardless of their length, are actual motion pictures of real children which were placed on a computer disk. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *see United States v. Vig,* 167 F.3d 443, 449 (8th Cir.) (jury was in a position to draw its own independent conclusion as to whether real children were depicted), *cert. denied,* — U.S. ——, 120 S.Ct. 146, 145 L.Ed.2d 125 (1999). It is in this vein that we apply the statute.

The only mention otherwise made of film in the statute is in the definitions, where Congress provided that " 'visual depiction' includes undeveloped film and video tape." 18 U.S.C. § 2256(5). With this being the case, we give words used in the statute their ordinary meaning. *Diamond v. Diehr,* 450 U.S. 175, 182, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

The everyday definition of "film" supports the conclusion that Congress clearly intended motion pictures to be covered by the term, "films." Otherwise, we would have the absurd result of the statute not prohibiting motion pictures which depict minors engaged in sexually explicit conduct on media other than typical film. Among the definitions given for "film" is: "4: motion picture." Webster's New Collegiate Dictionary 429 (1977).

The statute lists "films" as a specific, independent unit. Congress did not state three reels of film, etc., but "3 or more films." Appellant had seven.

We agree with appellate government counsel that Congress did not proscribe a minimum length for films or motion pictures and, given the broad protection from sexual exploitation Congress intended to accord minors, *see United States v. Whiting,* 165 F.3d 631 (8th Cir.1999), we hold that a motion picture of any length is covered by the statute, even if contained on a computer disk. Therefore, the seven motion pictures which appellant possessed on computer disks are within the statute's terms. The remaining issue is whether the other elements are sufficiently established by the evidence of record. As regards the remaining elements, we find, as a matter of law, that the government failed to sufficiently prove the critical jurisdictional element of interstate or foreign commerce.

██ The government sought to prove the required connection with interstate commerce via the sole theory of Internet activity by appellant. To prove this theory, the government presented expert testimony on the analysis of the hard disk drive (HD) of the government computer appellant used at work. Scripts or dialogs extracted from appellant's assigned computer HD revealed worldwide web addresses in states other than Alabama which his computer had accessed. These text files and "upload logs" revealed massive activity whereby files containing images depicting children engaged in sexually explicit conduct were both received and transmitted via the Internet and appellant's work computer. A substantial number of these files were traced back to this Internet traffic and also were found in duplicate on the HD of appellant's work computer and on 3½ inch disks (floppies) found in his home. This evidence clearly is sufficient to prove interstate activity if linkage to the files in question is otherwise demonstrated. *See United States v. Murray,* 52 M.J. 423, 425–26 (2000) (citing *United States v. Carroll,* 105 F.3d 740, 742 (1st Cir.1997), *cert. denied,* 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997); *ACLU v. Reno,* 929 F.Supp. 824, 830–

38 (E.D.Pa.1996)). However, with regards to the seven motion pictures, the necessary linkage is not established.

The statute mandates that at least three of the motion pictures traveled in interstate commerce at or before the point in time appellant came into possession of them. The only Internet link that the government could establish with the motion pictures was with the motion picture contained in "Baby-luv.mpg." A "deleted" text file recovered from appellant's work computer HD contained the following: "DCC Send of baby-luv.mpg to redpoint completed." This apparent transmission, however, is not sufficient evidence from which one may infer that appellant downloaded Babyluv.mpg, or the other 6 motion pictures, from the Internet. *See United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir.1996) (holding the government failed to produce any evidence, circumstantial or otherwise, from which jury could infer interstate activity). The fatal deficiency in the government's evidence is that proof that appellant at some time shipped or transmitted one of the motion pictures in interstate commerce is not proof that 3 or more of the motion pictures had earlier transited interstate commerce as required by the statute, for appellant may very well have obtained them from a source other than the Internet. *See United States v. Wilson*, 182 F.3d 737 (10th Cir. 1999) (holding circumstantial evidence which inferentially linked one diskette to interstate commerce not sufficient to allow inference that other two diskettes were similarly linked). Therefore, the government failed to prove the critical jurisdictional element required by 18 U.S.C. § 2252(a)(4)(B).

▮▮▮ Having concluded that the evidence on Specification 4, Charge II, is legally insufficient, we must now address any applicable lesser included offense prior to closing on this issue. Appellant was charged under the third clause (the crimes and offenses not capital clause) of Article 134 with violating the United States Code, 18 U.S.C. § 2252(a)(4). Whenever an offense is so charged, an offense under the other two clauses (conduct prejudicial to good order and discipline or conduct discrediting to the service) is necessarily included if the specification is drafted broadly enough to convey notice. *United States v. Williams*, 17 M.J. 207, 215–16 (C.M.A.1984); *United States v. Mayo*, 12 M.J. 286 (C.M.A.1982). Although the specification appears sufficiently broad to embrace an offense under either or both clauses, in view of the fact that this remains an unsettled area of the law and our final disposition, we need not address this factor at this time.

▮▮▮ Generally, when an appellate court disapproves a finding because proof of an essential element is missing, it may substitute a lesser included offense for the disapproved findings, often even where the lesser offense was not instructed upon or otherwise considered at trial. *United States v. McKinley*, 27 M.J. 78, 79 (C.M.A.1988). This general statement in *McKinley*, notwithstanding, there is a parallel body of law which provides that an appellate court may not approve a lesser included offense which was not instructed on or considered by the military judge. *United States v. Perkins*, 47 C.M.R. 259, 263–66, 1973 WL 14711 (A.F.C.M.R. 1973); *see generally United States v. Johnson*, 39 M.J. 1033 (A.C.M.R.1994); *United States v. Martin*, 50 C.M.R. 314, 316, 1975 WL 15608 (A.C.M.R.), *aff'd.*, 1 M.J. 75 (C.M.A.1975). Those cases which, after disapproving findings under clause 3, approved findings of a lesser included offense under either of the first two clauses of Article 134 addressed situations where the military judge had fully instructed the members that they had to be convinced beyond a reasonable doubt that the accused's conduct was either prejudicial to good order and discipline or service discrediting. *Williams*, 17 M.J. at 216; *Mayo*, 12 M.J. at 294.

▮▮▮ In the instant case, however, appellant opted for trial by military judge alone, and military judges, of course, do not instruct themselves prior to announcing findings. The precedents which have addressed this issue do not apply a different standard for bench trials where an offense is charged under the third clause of Article 134. The appellate court looks to the theory by which the case was prosecuted at trial. *Perkins*, 47 C.M.R. at 263–66; *Johnson*, 39 M.J. at 1036–37; *Martin*, 50 C.M.R. at 316–17.

It is abundantly clear that the government relied exclusively on the third clause, and that also is the manner by which appellant defended against the charge. During litigation of trial defense counsel's motions to dismiss the charge, his written motion set forth what he believed to be the elements of the offense. His submission did not include conduct prejudicial to good order and discipline or service discrediting as elements, and there was no objection by the government. Further, neither trial counsel nor trial defense counsel mentioned these elements in their respective closing arguments. *Ergo,* we will not approve a lesser included offense under Clause 1 or 2, Article 134. *Perkins,* 47 C.M.R. at 266.

We also leave for another day the issue of whether the government initially could have charged these offenses under Clause 1, 2, or both, and avoided the necessity of having to prove federal jurisdiction either territorially or via a link with interstate commerce. *See, e.g., United States v. Fox,* 50 M.J. 444, 445 (1999); *Williams,* 17 M.J. at 216; *United States v. Scholten,* 17 M.J. 171, 174 (C.M.A. 1984); *Mayo,* 12 M.J. at 293–94. In any event, that is not the manner by which the government chose to proceed. Therefore, we must hold the government to the path it chose.

**b. Obscene Materials Depicting Adults**

Appellant also attacks the legal and factual sufficiency of the evidence on Specification 5, Charge II, which charged a violation of 18 U.S.C. § 1462(a), the federal obscenity law. The salient part of the statute reads as follows:

Whoever ... knowingly uses any express company or other common carrier or interactive computer service (as defined in section 230(e)(2) of the Communications Act of 1934), for carriage in interstate or foreign commerce—

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character[.]

Appellant's specific complaints are that the government "failed to establish an interstate connection to a substantial amount of the evidence introduced on this specification," and that the government failed to define the applicable community standard or introduce evidence establishing the standard. We disagree.

We note from the outset that appellant's styling of this assignment of error implies a concession. Specifically, a "substantial amount" is not all; *ergo,* by implication, an interstate commerce connection was established with regards to some of the evidence. Unlike section 2252(a)(4)(B), section 1462(a) does not require a minimum amount of obscene material to violate the statute. Therefore, the evidence is legally sufficient if appellant used an interactive computer service for interstate transit of any of the obscene materials in issue. We find the evidence legally and factually sufficient.

The analysis performed on the HD of appellant's assigned work computer revealed that Internet Relay Chat (IRC) software had been installed on the computer. The local network administrator testified that IRC software was not part of the standard official government setup for government computers at Gunter Annex. IRC software enables the user or users to engage in real-time conversation over the Internet via keyboard input. Also installed on appellant's assigned computer as part of the IRC package was a Direct Client Connection (DCC), which allowed direct exchanges between appellant's computer and anyone desiring to connect without the necessity of using a chatroom or other forum as a medium. Further, this IRC–DCC combination allowed appellant's assigned government computer to serve as a File Server for anyone seeking access to child pornography. Whenever someone accessed appellant's assigned government computer, part of the welcome screen read, "DON'T FORGET TO SEND BACK SOME TEEN/PRETEEN PICS!!!" In fact, appellant's assigned government computer was configured to actively trade child pornography with any interested user of his File Server Service. Specifically, it was programmed to provide double for whatever he received. The sophistication of appellant's configuration was such that, if one who accessed appellant's server was short of units,

the computer conveniently provided a game of chance in the form of a horse race whereby the user could seek to win units with which to trade.

In addition to the evidence detailed, *ante*, over 500 floppies were seized from appellant's home. These disks contained files which contained visual depictions of both adults and children engaged in sexually explicit conduct that were identical to files found on his government computer HD. These files were password-protected, and the password used on appellant's government computer HD, his personal computer HD, and the floppies, was the same.

The analysis of his government computer HD also revealed activity involving floppies regarding the files which contained some of the visual depictions seized. While the analyst could not specify whether the activity was transferring files from the HD to the floppies, the converse, or merely viewing files already on floppies without a transfer, the analysis nonetheless detected activity involving floppies on a computer with access to the Internet.

Trial defense counsel tried to suggest that someone else could have installed the software and used appellant's government computer for these illicit activities. The evidence, however, albeit circumstantial, compellingly demonstrates it was appellant who configured and programmed his assigned government computer to function as a File Server to traffic in obscene materials. The sophisticated IRC–DCC setup on appellant's work computer and the text files recovered from the HD demonstrate his extensive activity on the Internet involving child pornography and obscene materials depicting adults. Appellant also misses the mark on the issue of the applicable community standard.

■■■ Trial defense counsel endeavored to convince the military judge that a so-called Cyberspace Community Standard was the proper community standard by which to determine if the materials in appellant's possession were obscene. He relied on *dicta* in *United States v. Maxwell*, 45 M.J. 406 (1996), to support his assertion. The prosecution specifically argued to the military judge that an Air Force standard was the proper standard, and that is the standard which the military judge applied. We find no error.

The language in *Maxwell* which appellant relies on is:

> [W]e are not prepared to state unequivocally that an Air Force community standard is the one to apply when the conviction is based upon the U.S.Code. [citation omitted] The standard to be used in this case may be the entire community of subscribers to the AOL service or the members of AOL who use a specific bulletin board.

*Id.* at 426. The language used by our superior court in the last sentence, to say the least, is not at all illuminating when one considers that just prior to the quoted language the court observed that, in the case then before it, an Air Force standard was most likely the appropriate standard. *Id.* In any event, we consider the above language as intellectualizing at best and not any indication that our superior court will construe this as the law.

First, the Court specifically recognized the Air Force as a specific community for determining community standards of obscenity. *Id.* at 426; *see also United States v. Hullett*, 40 M.J. 189, 191 (C.M.A.1994); *United States v. Dyer*, 22 M.J. 578 (A.C.M.R.1986). The problem in *Maxwell* was that the military judge did not instruct the members to apply an Air Force standard but the nationwide standard which the Supreme Court specifically held was inapplicable. *Maxwell*, 45 M.J. at 425–26. Second, a so-called cyberstandard has been rejected by at least one federal court, *United States v. Thomas*, 74 F.3d 701 (6th Cir.1996), and so do we. Such a standard would be just as untenable as the nationwide standard. Users of Internet chatrooms and other services connect from global locations, not just from points located within the United States. Further, to use a standard fashioned by the users of a specific bulletin board service (BBS) or chatroom would essentially repeal the obscenity laws. Obviously, people who actively seek such materials would not deem them obscene. Even commentators who advocate a different standard for cyberspace do so, not based on a special standard for specific chatrooms or BBS, but as an adjunct to the constitutional right to possess obscene materials in the

privacy of one's home, and the fact that the personal computer allows it to be done directly between the individual and source. *See, e.g.,* John S. Zanghi, *"Community Standards" in Cyberspace,* 21 U. Dayton L.Rev. 95 (1995).

■ Appellant trafficked in obscenity by using his assigned Air Force computer on an Air Force installation. The compelling circumstantial evidence is that the obscene materials in issue that were found in his off-base home were first downloaded from off of the Internet, or received from other individuals via the Internet, onto his assigned Air Force computer. He then copied them to floppies which he carried home. The military judge was entirely correct to apply an Air Force standard of obscenity. *Maxwell,* 45 M.J. at 426. Further, as in *Maxwell,* the materials in the instant case are so graphic as to be obscene regardless of the standard applied. *Id.* Therefore, we find the evidence legally and factually sufficient.

### III. Sentence Reassessment

■ In light of our disapproval of the findings of guilty on Specification 4, Charge II, we must now reassess the sentence. Before we may reassess a sentence to cure error, we must be reasonably certain that we can determine the minimum sentence which the sentencing authority would have imposed absent the offense charged in Specification 4, Charge II. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305 (C.M.A.1986). We are confident we can do so in the instant case.

We are convinced that the military judge would have sentenced appellant to the same sentence even in the absence of the disapproved findings. The most aggravating factor of this case is appellant was a purveyor of child pornography or other obscene materials who used his assigned government computer to facilitate his illicit activities. Possessing seven fewer items depicting child pornography does not change the seriousness of his crimes one iota. Therefore, we believe the sentence is nonetheless appropriate for the remaining offenses.

### IV. Sentence Severity

■ Appellant also asks that we find his sentence inappropriately severe. In de-

termining sentence severity, this Court must exercise its judicial powers to assure that justice is done and that the accused gets the punishment he deserves. Performing this function does not authorize this Court to exercise clemency. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988). The primary manner by which we discharge this responsibility is to give individualized consideration to an appellant, including the nature and seriousness of the offenses and the character of the appellant's service. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982).

■ Applying the guidance of *Healy* and *Snelling,* we do not find appellant's sentence inappropriately severe. Article 66(c), UCMJ. In fact, with respect to this category of offenses, we find the surrounding circumstances of appellant's misconduct to be among the more aggravating which this Court has had occasion to consider.

### V. Other Assignments of Error

We have considered the remaining assignments of error submitted by appellant and resolved them adversely to him. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Powell,* 49 M.J. 460 (1998); *United States v. Palmiter,* 20 M.J. 90 (C.M.A.1985); *United States v. Boyd,* 52 M.J. 758 (A.F.Ct. Crim.App.2000); *United States v. Erby,* 46 M.J. 649 (A.F.Ct.Crim.App.1997), *aff'd in part and modified in part,* 49 M.J. 134 (1998); *United States v. Washington,* 42 M.J. 547 (A.F.Ct.Crim.App.1995).

### VI. Conclusion

The findings of guilty on Specification 4, Charge II, are disapproved and the specification dismissed. Finding no error prejudicial to the substantial rights of appellant, the findings, as modified, and sentence, as reassessed, are hereby

AFFIRMED.

Senior Judge SCHLEGEL and Judge BURD concur.