# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40343**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daniel O. GAUSE-RADKE**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 September 2023

————————————

*Military Judge*: Matthew P. Stoffel.

*Sentence*: Sentence adjudged 9 April 2022 by GCM convened at Fairchild
Air Force Base, Washington. Sentence entered by military judge on 24
May 2022: Dishonorable discharge, forfeiture of $1,000.00 pay per
month for 3 months, hard labor without confinement for 3 months, re-
striction to base for 2 months, and a reprimand.

*For Appellant*: Major David L. Bosner, USAF.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Captain Olivia
B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge
JOHNSON and Senior Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

At a general court-martial, a panel of officer members convicted Appellant,
contrary to his pleas, of one specification of attempted sexual assault of a child,

one specification of dereliction of duty, one specification of sexual abuse of a child by sexual contact, and one specification of sexual abuse of a child by indecent exposure, in violation of Articles 80, 92, and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 892, 920b.[1,2] The members sentenced Appellant to a dishonorable discharge, forfeiture of $1,000.00 pay per month for three months, hard labor without confinement for three months, restriction to base for two months, and a reprimand. The convening authority took no action on the findings but reduced the hard labor without confinement and the restriction to base to that amount completed at the time of the commencement of appellate leave.

Appellant raises four assignments of error challenging the legal and factual sufficiency of each of his four convictions. Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

In July 2020, Appellant was a new arrival on station at Misawa Air Base, Japan. Towards the end of July 2020, Appellant walked into the Airman and Family Readiness Center on base. Standing next to the reception desk was 13-year-old BW. Upon seeing Appellant in his uniform approaching the desk, BW stepped aside so Appellant could talk to BW's friend who was working at the desk at the time. After talking to BW's friend, Appellant turned to BW, noticed that BW was in a cast, and offered her a tip about how she could scratch inside the cast using a hanger. He then asked BW if she knew any places he could go because he was new to the area. BW relayed that she knew quite a few places and shared some ideas with Appellant. They continued to talk for about five minutes before Appellant wished her a good day and left.

A day or two after this interaction, BW noticed that a person named "Daniel" had added her on Snapchat. BW accepted this add thinking that it was from a person with whom she was friends. She sent "Daniel" a message saying "hi." The two conversed over Snapchat and BW realized quickly that the Daniel to whom she thought she was speaking was not the friend she previously believed it was. Rather, she realized that it was Appellant. BW continued to converse with Appellant and their conversations increased in frequency over the

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The court members found Appellant not guilty of one specification of attempted sexual abuse of a child by indecent communication, two specifications of sexual abuse of a child by sexual contact, one specification of sexual abuse of a child by indecent conduct, and three specifications of assault consummated by a battery, in violation of Articles 80, 120b, and 128, UCMJ, 10 U.S.C. §§ 880, 920b, 928.

next few days. On the second day of their conversations, BW told Appellant that she was 14 years old and in middle school. Appellant asked if BW had any older friends and BW mentioned DJ, her friend who was either 17 or 18 years old at the time. Appellant responded that he already knew DJ as they had been matched on a dating application. After that conversation, BW did not remember mentioning her own age again to Appellant.

Their conversations on Snapchat continued about three to four times per day over the next several days. It began friendly but eventually turned into more sexualized conversations. Appellant made sexual jokes, asked about BW's sexual experiences, and sent photos of himself to BW. Appellant sent naked photos to BW more than two times, either as a single photo or as an album of photos. The photos depicted Appellant's exposed penis. On one occasion, Appellant sent BW a photo where he was not wearing clothes immediately after exiting the shower and captioned it, "you like what you see?" The topics of sexual intercourse and oral sex came up in multiple messages. Appellant offered at one point to pick up BW so he could bring her back to his dormitory, saying that he would make it worth her while.

At some point later, BW was on base at a restaurant very close to Appellant's dorm waiting on DJ when Appellant approached her. He asked if BW wanted to come over and watch a movie with him in his dorm room which was a short walk from the restaurant. Dorm rules and regulations prohibited guests under 18 years old in the dorms, but Appellant brought BW there anyway. Upon entering the room, BW sat down near the headboard of the bed and Appellant sat near the edge of the bed. Appellant stated he did not have a TV but that they could watch a movie on his gaming setup. BW declined. Appellant scooted closer to her and began kissing her; he proceeded to get on top of BW and put his hand on her breast. He asked if he could keep going and BW said, "Yes." Appellant touched BW's breast over her shirt and under her shirt, but over BW's bra. During this interaction, DJ messaged BW saying that she was ready. BW got up, put her shoes on, told Appellant that she had plans with DJ, and walked out of the room. Shortly after the interaction in the dorm room, BW stopped talking to Appellant on Snapchat.

BW's mother soon learned that BW had something going on with an Airman on the base. As a result, she took BW's phone and brought it to the Air Force Office of Special Investigations (AFOSI) to express concerns about a military member reaching out and communicating with her daughter. In response, AFOSI agents interviewed BW. Following that interview, Special Agent (SA) ST obtained consent from BW's parents to take over BW's Snapchat account and pretend to be BW.

BW identified which Snapchat account/screen name belonged to Appellant and SA ST began talking to Appellant as "BW." Eventually "BW" persuaded

Appellant to continue their conversation on Kik, another social media application. Their conversation on Kik continued for several messages and "BW" told Appellant that "she" would hopefully be free from her grounding by the upcoming weekend. Appellant replied by asking "BW" out for a drive, movie, or dinner. They continued to talk about what to do and eventually settled on dinner, a movie, and then back to his room on Saturday. Still pretending to be "BW," SA ST later asked if they could do Sunday instead. Appellant said, "Ok." The following exchange followed:

> ["BW":] I need to tell you something but you gotta promise not to get mad ok
>
> [Appellant:] Ok
>
> ["BW":] I'm actually 13 not 14 but ima be 14 in like 3 months so I'm pretty much 14
>
> [Appellant:] You told me 16 before
>
> ["BW":] I never told you 16 lol
>
> [Appellant:] I swear you did
>
> ["BW":] No stupid [smiling and crying emojis]

The conversation continued. Appellant and "BW" planned on Appellant picking up "BW" from her friend's house and bringing her back to Appellant's room. They talked about what they would do while she was there, and the conversation turned sexual. They discussed foreplay, oral sex, and intercourse. They talked about Appellant using a condom and Appellant told "BW" to shave. "BW" told Appellant to get "her" a Bang Sour Heads energy drink so they could stay up later.

Appellant showed up at the residence the next day as planned. Upon his arrival, agents from AFOSI approached the car, pulled him out, and apprehended him. Agents found a Bang Sour Heads energy drink and a box of condoms in his car.

Following his apprehension, Appellant was interviewed by SA ST and another agent. Appellant stated BW told him that she was 15 years old. He admitted to bringing BW to his dorm room and touching her breast while there and to sending her explicit photos, including one of his penis. Further, Appellant acknowledged that his intent in picking up BW on Sunday night was to have sex with her.

4

## II. DISCUSSION

### A. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). The term "reasonable doubt" does not mean evidence free from conflict. *See Lips*, 22 M.J. at 684. This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d); *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted).

Appellant was convicted of sexual abuse of a child by sexual contact in violation of Article 120b, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that between on or about

15 July 2020 and on or about 15 August 2020, at or near Misawa Air Base, Japan, Appellant committed a lewd act upon BW by touching the breast of BW with his hand and with an intent to gratify Appellant's sexual desire; and (2) that at the time of the lewd act, BW had not attained the age of 16 years. *See Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 62.b.(3); *see also* 2019 *MCM*, pt. IV, ¶¶ 62.a.(h)(1), 62.a.(h)(5)(3) (defining sexual act, and lewd act as "any sexual contact with a child").

Appellant was convicted of sexual abuse of a child by indecent exposure in violation of Article 120b, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that between on or about 15 July 2020 and on or about 15 August 2020, at or near Misawa Air Base, Japan, Appellant committed a lewd act upon BW by intentionally exposing his genitalia to BW with an intent to gratify his sexual desire; and (2) that at the time of the lewd act, BW had not attained the age of 16 years. *See* 2019 *MCM*, pt. IV, ¶ 62.b.(3); *see also* 2019 *MCM*, pt. IV, ¶ 62.a.(h)(5)(B) (defining lewd act in relation to intentional exposure to a child).

In a prosecution for engaging in a lewd act with a child,

> it need not be proven that the accused knew that the other person . . . had not attained the age of 16 years, but it is a defense . . . which the accused must prove by a preponderance of the evidence, that the accused reasonably believed that the child had attained the age of 16 years, if the child had in fact attained at least the age of 12 years.

2019 *MCM*, pt. IV, ¶ 62.a.(d)(2).

Similarly, in prosecutions under Article 120b(c), UCMJ, 10 U.S.C. § 920b(c), *Sexual Abuse of a Child*, an accused has the burden of proving mistake of fact as to age by a preponderance of the evidence. Rule for Courts-Martial (R.C.M.) 916(b)(3). "Neither Article 120b(d)(2), UCMJ, nor R.C.M. 916(j)(2) place any limitations on the source or the kind of evidence that may establish a mistake of fact defense." *United States v. Thompson*, 83 M.J. 1, 4 (C.A.A.F. 2022). "Findings may be based on direct or circumstantial evidence." *Id.* (alteration omitted) (citing R.C.M. 918(c)).

Appellant was convicted of attempted sexual assault of a child in violation of Article 80, UCMJ, which required the Government to prove the following four elements beyond a reasonable doubt: (1) that, on or about 16 August 2020, at or near Misawa Air Base, Japan, Appellant did certain overt acts, that is: purchasing condoms and driving to the location where he believed BW to be with those condoms in his possession; (2) that the acts were done with the

specific intent to commit the offense of sexual assault of a child;[3] (3) that the acts amounted to more than mere preparation, that is, they were a substantial step and a direct movement toward the commission of the intended offense; and (4) that such acts apparently tended to bring about the commission of the offense of sexual assault of a child, that is, the acts apparently would have resulted in the actual commission of the offense of sexual assault of a child except for a circumstance unknown to Appellant which prevented completion of the offense. *See* 2019 *MCM*, pt. IV, ¶¶ 4.b, 62.b.(2)(a).

Appellant was also convicted of dereliction of duty in violation of Article 92, UCMJ, which required the Government to prove the following three elements beyond a reasonable doubt: (1) that Appellant had a certain duty, that is: to refrain from permitting BW, a person under the age of 18, to enter his dormitory; (2) that Appellant knew of the duty; and (3) that between on or about 15 July 2020 and on or about 15 August 2020 at or near Misawa Air Base, Japan, Appellant was willfully derelict in the performance of that duty by willfully failing to refrain from permitting BW, a person under the age of 18, to enter his dormitory. *See* 2019 *MCM*, pt. IV, ¶ 18.c.(3).

Regarding the legal sufficiency of a specification alleged,

> [W]hen an accused servicemember is charged with an offense at court-martial, each specification will be found constitutionally sufficient only if it alleges, "either expressly or by necessary implication," "every element" of the offense, "so as to give the accused notice [of the charge against which he must defend] and protect him against double jeopardy."

*United States v. Turner*, 79 M.J. 401, 403 (C.A.A.F. 2020) (second alteration in original) (quoting *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)).

A specification first challenged after trial for failure to state an offense is viewed with greater tolerance than one which was attacked before findings and sentence. *Id.* In the former scenario, the specification will be viewed with "maximum liberality." *Id.* (quoting *United States v. Bryant*, 30 M.J. 72, 73 (C.M.A. 1990)).

---

[3] The elements of the attempted offense of sexual assault of a child were: (1) that Appellant committed a sexual act upon BW by penetrating BW's vulva with his penis; and (2) that at the time of the sexual act, BW had attained the age of 12 years, but had not attained the age of 16 years. *See* 2019 *MCM*, pt. IV, ¶ 62.b.(2)(a).

**B. Analysis**

**1. Sexual Abuse of a Child by Sexual Contact**

Appellant asserts that his conviction for sexually abusing BW by touching her breast is both legally and factually insufficient. Appellant argues first that he had an honest and reasonable mistake of fact regarding BW's age. To support this argument, he points to his response to SA ST's Kik messages that "BW" was 13, not 14. Appellant responded, "You told me 16 before." Appellant argues this shows that Appellant had a mistake of fact regarding BW's age, at least as it pertains to all the conduct that occurred prior to this message.

A reasonable mistake of fact as to age is a defense to sexual abuse of a child. For the defense to apply, an accused must have held, as a result of ignorance or mistake, an incorrect belief that the child was at least 16 years old. R.C.M. 916(j)(2). The mistake must have existed in the mind of the accused and must be reasonable under all the circumstances. *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2010); *United States v. Strode*, 43 M.J. 29, 32–33 (C.A.A.F. 1995).

BW testified at trial that on the second day of their conversations, BW told Appellant she was 14 years old and in middle school. This conversation occurred before BW was with Appellant in his dorm room where Appellant admittedly touched her breast under her shirt and as BW described it, over her bra. Moreover, Appellant told AFOSI agents in his interview that BW informed him she was 15 years old. Either way, the evidence clearly showed that Appellant did not have an honest mistake of fact with regards to BW's age. Even if he had, such a belief would not be reasonable under all of the circumstances. Thus, Appellant's argument that a defense of mistake of fact applied to this specification fails.

Appellant argues next that the specification fails to align with the evidence, specifically with regards to how Appellant touched BW's breast. The specification alleged that Appellant committed a lewd act upon BW by touching her breast with his hand and with an intent to gratify Appellant's sexual desire. The specification did not expressly allege either "direct, skin-to-skin touching" or a "touching over the clothing." Appellant argues that because the specification did not expressly allege over the clothing, the conviction is legally and factually insufficient.

Legal sufficiency of a specification is a different issue than the legal and factual sufficiency of a conviction based on evidence presented at trial. Appellant's arguments conflate these concepts. Here, the specification properly states an offense. The definition of sexual contact includes touching, either directly or through the clothing, the breast with an intent to gratify the sexual desire of any person. *See* 2019 *MCM*, pt. IV, ¶ 62.a.(h)(1). The specification

alleges each of the statutory elements expressly, and even provided specificity about the nature of the sexual contact: touching the breast with his hand with the requisite intent.

Appellant avers that to be sufficient, the Government needed to expressly allege the applicable portion of a definition of an element, in this case, sexual contact. The military is a notice pleading jurisdiction. If a specification informs an accused of an offense against which he must defend and bars a future prosecution for the same offense, the specification is sufficient. *United States v. Gallo*, 53 M.J. 556, 564 (A.F. Ct. Crim. App. 2000) (noting that the "real issue" raised by the appellant was legal and factual sufficiency, not sufficiency of the specification at issue). The Government was not required to expressly allege the subpart of the definition of sexual contact, "through the clothing," as Appellant argues. The specification as alleged was sufficient.

While in his dorm room with BW on his bed, Appellant scooted closer to her and began kissing her. Appellant proceeded to get on top of BW and put his hand on her breast. He asked if he could keep going and BW said, "Yes." Appellant touched BW's breast over her shirt and under her shirt, but over BW's bra. His conviction for touching her breast, as expressly alleged, is legally and factually sufficient.

### 2. Sexual Abuse of a Child by Indecent Exposure

Appellant also asserts his conviction for sexually abusing BW by indecent exposure is both legally and factually insufficient. As he does for the sexual abuse by sexual contact conviction, Appellant argues first that he had an honest and reasonable mistake of fact regarding BW's age. For the reasons set forth above, this argument is not persuasive here either.

Appellant next argues the conviction is not legally or factually sufficient because the Government did not expressly allege in the specification that the exposure was either live or through communication technology. Again, this conflates the concept of a legally sufficient specification and a legally and factually sufficient conviction.

The specification alleged Appellant committed a lewd act by intentionally exposing his genitalia to BW with an intent to gratify his sexual desire. The definition of lewd act includes an exposure of "one's genitalia, anus, buttock, or female areola or nipple to a child *by any means*, including via any communication technology." 2019 *MCM*, pt. IV, ¶ 62.a.(h)(5)(B) (emphasis added). The Government followed the language contained in the sample specification for this offense, which does not set forth a recommendation that the specification

also expressly allege "through any communication technology."[4] The reason for its absence is plain. The statute makes clear that the means of the exposure—live or in person—does not matter, as it uses the language "by any means." 2019 *MCM*, pt. IV, ¶ 62.a.(h)(5)(B). The Government was not required to expressly allege this clause for the specification to be legally sufficient.

### 3. Attempted Sexual Assault of a Child

Appellant also asserts his conviction for attempted sexual assault of a child is both legally and factually insufficient. As he does for the sexual abuse convictions, Appellant argues first that the evidence did not prove that Appellant did not have a mistake of fact regarding BW's age.

As alleged in this case, the attempted sexual assault of a child for which Appellant was convicted is a specific intent crime. Therefore, the defense of mistake of fact as to age does not require that the mistake, if it is honestly held, be reasonable. R.C.M. 916(j)(1). The absence of the reasonableness requirement to a mistake of fact as to age defense, under these circumstances, does not change the outcome however. As noted above, BW told Appellant that she was 14 years old and in middle school. Additionally, before Appellant drove to the residence where he believed BW to be, he had the Kik conversation with SA ST wherein Appellant was specifically told that "BW" was 13 years old. Moreover, Appellant told AFOSI agents in his interview that BW told him she was 15 years old. Appellant did not have an honest mistaken belief that BW was 16 years old or older.

Appellant argues next this specification is not legally or factually sufficient because he was entrapped. This argument focuses on the interaction between Appellant and SA ST acting as "BW" and their messages.

"It is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." R.C.M. 916(g). When a person accepts a criminal offer without an extraordinary inducement to do so, he demonstrates a predisposition to commit the crime in question. *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992) (citations omitted).

> Inducement is government conduct that "creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." Inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, "persuasion, fraudulent representations,

---

[4] Our superior court emphasized "the peril that lies in wait for any government attorney who, when drafting charges, fails to meticulously follow the language contained in the UCMJ sample specifications." *Turner*, 79 M.J. at 404 (footnotes omitted).

> threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." Inducement cannot be shown if government agents merely provide the opportunity or facilities to commit the crime or use artifice and stratagem.

*United States v. Howell*, 36 M.J. 354, 359–60 (C.M.A. 1993) (citations and emphasis omitted) (quoting *United States v. Stanton*, 973 F.2d 608, 610 (8th Cir. 1992)).

Appellant was not induced by government conduct to commit the crime of attempted sexual assault of a child. SA ST's messages while acting as "BW" do not demonstrate the different typical forms of inducement that can be fairly characterized as creating a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense. Rather, the entirety of the evidence in this case demonstrates that the criminal design of sexually assaulting BW originated with Appellant, not SA ST or any other government actors. This criminal design is manifested by Appellant's actions of touching BW's breast in his dorm room after she told him she was 14 years old. Appellant described this interaction and stated BW told him that she never had sex before. Appellant asked her if she wanted to, to which BW replied she would rather wait. Appellant admitted to AFOSI that if BW had wanted to have sex at that time, he would have had sex with her. Appellant's interaction with BW in his dorm occurred well before SA ST used BW's Snapchat account and began chatting with Appellant.

BW described Appellant's frequent discussion of sexually charged topics like oral sex and intercourse in their messages before AFOSI was involved in the case. These discussions with a 14-year-old child as well as Appellant's sending of pictures of his penis to BW demonstrate that he was predisposed to commit this offense. SA ST and AFOSI merely provided the opportunity or facilities for Appellant to commit the crime. It was Appellant who drove to the residence with a box of condoms where he believed BW was located and after BW and Appellant had engaged in sexual contact and had discussed foreplay, oral sex, and sexual intercourse. Appellant was not entrapped.

### 4. Dereliction of Duty

Finally, Appellant asserts his conviction for dereliction of duty is legally and factually insufficient because the evidence did not support Appellant's knowledge of his duty to refrain from bringing someone under the age of 18 into the dorms.

The evidence admitted at trial proves beyond a reasonable doubt that Appellant had actual knowledge of his duty to refrain from permitting BW to enter his dormitory room. The superintendent of unaccompanied housing, Master

Sergeant (MSgt) WC, testified that Appellant was a resident in the dorms and that there are rules and regulations for living in the dorms. He stated every resident receives a copy of the dormitory standards of conduct upon in-processing. The standards of conduct includes a social visit policy which reads, "**Guests under the age of 18 are not permitted**." MSgt WC testified each new resident signs an acknowledgment form after a page-by-page review of the standards. MSgt WC stated that a record is kept for each resident that contains the acknowledgment form and he keeps these records. The Government introduced into evidence an acknowledgment form completed by "Gause-Radke, Daniel, O" and dated "15 Jul 20," a date consistent with the relative time Appellant arrived on-station. MSgt WC testified the acknowledgement form was found in Appellant's resident file. Further, MSgt WC testified that in the year 2020, at the entrance to every dormitory was a posted sign giving a very brief explanation that no one under the age of 18 was authorized on the dormitory campus at any time.

The evidence Appellant knew of his duty to refrain from bringing someone under the age of 18 into the dorms was overwhelming. Therefore, Appellant's argument that his conviction for dereliction of duty is legally and factually insufficient is unpersuasive.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found the essential elements and rejected the defenses applicable to sexual abuse of a child by sexual contact, sexual abuse of a child by indecent exposure, attempted sexual assault of a child, and dereliction of duty beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and approved sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court